UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

MARTHA STEWART, Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security, Defendant.

Case No. EDCV 08-1406-OP

MEMORANDUM OPINION; ORDER

The Court[1] now rules as follows with respect to the disputed issues listed in the Joint Stipulation ("JS").[2]

/ / /

/ / /

/ / /

**I.**

[1] Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before the United States Magistrate Judge in the current action. (See Dkt. Nos. 8, 9.)

[2] As the Court advised the parties in its Case Management Order, the decision in this case is being made on the basis of the pleadings, the Administrative Record, and the Joint Stipulation filed by the parties. In accordance with Rule 12(c) of the Federal Rules of Civil Procedure, the Court has determined which party is entitled to judgment under the standards set forth in 42 U.S.C. § 405(g).

## DISPUTED ISSUES

As reflected in the Joint Stipulation, the disputed issues which Plaintiff raises as the grounds for reversal and/or remand are as follows:

1. Whether the Administrative Law Judge ("ALJ") properly considered the treating physician's opinion;
2. Whether the ALJ properly evaluated Plaintiff's credibility;
3. Whether the ALJ properly evaluated the lay witness testimony;[3] and
4. Whether the ALJ posed a complete hypothetical to the vocational expert ("VE").

(JS at 4.)

## II.

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied. DeLorme v. Sullivan, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence means "more than a mere scintilla" but less than a preponderance. Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971); Desrosiers v. Sec'y of Health & Human Servs., 846 F.2d 573, 575-76 (9th Cir. 1988). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401 (citation omitted). The Court must review the record as a whole and consider adverse as well as supporting evidence. Green v. Heckler, 803 F.2d 528, 529-30 (9th Cir. 1986). Where evidence is susceptible of more than one rational interpretation, the Commissioner's decision must be upheld. Gallant v. Heckler, 753 F.2d 1450, 1452

---

[3] Plaintiff contends that the ALJ improperly evaluated the credibility of the lay witness testimony within Plaintiffs' credibility argument. (JS at 11-13.) The Court will discuss this contention separately.

(9th Cir. 1984).

III.

DISCUSSION

**A. The ALJ Properly Considered the Opinion of Plaintiff's Treating Physician.**

Plaintiff contends that the ALJ erroneously rejected the opinion of her treating psychiatrist, Dr. Krishna Murthy. (JS at 4-8.) Pursuant to the Stipulation for Order of Remand, the parties agreed the ALJ would give consideration to the opinion of Dr. Murthy. (Id. at 4, Ex. A; Administrative Record ("AR") at 383-84.) Plaintiff contends that while the ALJ cited to Dr. Murthy's opinion, the ALJ failed to provide specific and legitimate reasons based on substantial evidence for rejecting the opinion. (JS at 5.)

**1. Applicable Law.**

It is well-established in the Ninth Circuit that a treating physician's opinions are entitled to special weight, because a treating physician is employed to cure and has a greater opportunity to know and observe the patient as an individual. McAllister v. Sullivan, 888 F.2d 599, 602 (9th Cir. 1989). "The treating physician's opinion is not, however, necessarily conclusive as to either a physical condition or the ultimate issue of disability." Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989). The weight given a treating physician's opinion depends on whether it is supported by sufficient medical data and is consistent with other evidence in the record. See 20 C.F.R. § 404.1527(d)(2). If the treating physician's opinion is uncontroverted by another doctor, it may be rejected only for "clear and convincing" reasons. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995); Baxter v. Sullivan, 923 F.2d 1391, 1396 (9th Cir. 1991). If the treating physician's opinion is controverted, it may be rejected only if the ALJ makes findings setting forth specific and legitimate reasons that are based on the substantial evidence of record. Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Magallanes, 881 F.2d at

751; Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987).

However, the Ninth Circuit also has held that "[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." Thomas, 278 F.3d at 957; see also Matney ex rel. Matney v. Sullivan, 981 F.2d 1016, 1019 (9th Cir. 1992). A treating or examining physician's opinion based on the plaintiff's own complaints may be disregarded if the plaintiff's complaints have been properly discounted. Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 602 (9th Cir. 1999); see also Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997); Andrews v. Shalala, 53 F.3d 1035, 1043 (9th Cir. 1995). Additionally, "[w]here the opinion of the claimant's treating physician is contradicted, and the opinion of a nontreating source is based on independent clinical findings that differ from those of the treating physician, the opinion of the nontreating source may itself be substantial evidence; it is then solely the province of the ALJ to resolve the conflict." Andrews, 53 F.3d at 1041; Magallanes, 881 F.2d at 751; Miller v. Heckler, 770 F.2d 845, 849 (9th Cir. 1985).

**2. Analysis.**

Here, the ALJ considered Dr. Murthy's opinion, determined it was not entitled to controlling weight, and provided specific and legitimate reasons for rejecting the opinion. (AR at 306, 308-12.)

The ALJ found that Dr. Murthy's reports were inconsistent. (Id. at 308.) Contrary to Plaintiff's assertion that the reports were inconsistent because they reflected different time periods, the reports were internally inconsistent. On December 17, 2003, Dr. Murthy opined that Plaintiff was not able to work; on the same form, Dr. Murthy indicated that Plaintiff has no limitations that affect her ability to work. (Id. 255, 308.) On two"Mental Status Review" forms, one dated

November 1, 2003, and the other undated, Dr. Murthy indicated that Plaintiff has slight to no mental limitations; on the other form, Dr. Murthy indicated that Plaintiff has slight to moderate limitations. (Id. 165, 167, 308.) Similarly, in two undated "Residual Psychiatric Disability" forms, Dr. Murthy indicated that Plaintiff has slight to no limitations on one form, and on the other, he indicated that Plaintiff has slight to moderate limitations. (Id. at 164, 166, 308.) In another "Residual Psychiatric Disability" form dated November 11, 2006, Dr. Murthy indicate that Plaintiff is severely limited in her ability to understand, carry out, and remember instructions, but was only moderately limited in performing complex tasks. (Id. at 308, 390.) It is also notable that Dr. Murthy provided no narrative explanation for his conclusions regarding Plaintiff's mental capacity. (Id. at 164-67, 390-91.) Based on the inconsistences of Dr. Murthy's opinion and the lack of explanation for his conclusions, Dr. Murthy's opinion is not entitled to great deference. Crane v. Shalala, 76 F.3d 251, 253 (9th Cir. 1996) (ALJ properly rejected doctor's opinion because they were check-off reports that did not contain any explanation of the bases of their conclusions); see also Morgan, 169 F.3d at 602.

As to Dr. Murthy's treatment records, the ALJ found the records did not substantiate any disabling mental conditions. The ALJ provided:

> Dr. Murthy's treating notes do not reflect disabling symptoms. The claimant has been followed since 2001 by Dr. Murthy at San Bernardino County Department of Behavioral Health. The claimant reported a history of past substance abuse, and has complained of increasing depression, lack of motivation, irritability, unexplained anger, and poor attention. Major depressive disorder, recurrent, severe, without psychotic symptoms, and borderline intellectual functioning have been diagnosed. The claimant was treated with Effexor, Paxil, and Prozac.

> A global assessment of functioning of 51 was indicated on January 22, 2001. According to the Diagnostic and Statistical Manual of Mental Disorders (DSM-IV) (4th ed., 1994), a GAF score between 51-60 indicates only moderate symptoms or moderate difficulty in social, occupational, or school functioning. The claimant was seen at regular intervals by Dr. Murthy primarily for medication maintenance. Risperdal was later added to her pharmaceutical regime. Progress notes contain limited specific mental status findings, but do indicate that claimant was compliant with prescribed treatment. She experienced some relief of symptoms, with no unusual side-effects of medication. Progress notes from Dr. Murthy at Exhibit 11F are difficult to read; however claimant only received routine outpatient treatment with no mental health crisis requiring inpatient hospitalization or intensive treatment.

(AR at 308 (citations omitted).) The record supports the ALJ's finding as to Dr. Murthy's progress reports and treatment plan. (Id. at 163-228, 255-59, 390-420.) As the ALJ stated, Dr. Murthy provided Plaintiff with a conservative treatment plan, consisting of only prescribing medication with no indication of hospitalization, intensive treatment, counseling sessions, or other forms of treatment. (Id.) Moreover, Dr. Murthy's progress reports suggest no disabling symptoms. (Id.) Dr. Murthy also concluded that Plaintiff had a Global Assessment of Functioning ("GAF") score of 51, supporting a finding that Plaintiff is only moderately limited in her mental capacity.[4] (AR at 308.) Finally, Dr.

---

[4] GAF scores reflect the "clinician's judgment of the individual's overall level of functioning . . . [including] psychological, social and occupational functioning" and are not meant to be a conclusive medical assessment of overall functioning, but rather, are only intended to be "useful in planning treatment[,] . . .

(continued...)

Murthy's progress reports, with the exception of the forms discussed previously, provide no limitations as to Plaintiff's functional abilities. (Id. at 168-228, 255-59, 392-420.)

Further, in rejecting the opinion of Dr. Murthy, the ALJ relied upon the medical opinions of several consultative physicians. (Id. at 308-09.) On July 14, 2003, Dr. Ernest Bagner, conducted a complete psychiatric evaluation on Plaintiff. (Id. at 125-28.) Based on his evaluation, Dr. Bagner assessed Plaintiff's functional limitations as follows:

> The patient would have no limitations completing simple tasks. She would have zero to mild limitation interacting with supervisors, peers and the public, maintaining concentration and attention and completing complex tasks. She would have mild limitations handling normal stresses at work and completing a normal workweek without interruption.

(Id. at 128.) Dr. Bagner also assessed Plaintiff to have a GAF score of 74, or having "transient and expectable reactions to psychological stressors . . . [and] no more than slight impairment in social, occupational, or school functioning . . . ." (Id. at 127); DSM-IV at 34. Thus, Dr. Bagner's evaluation, based on independent clinical findings, suggests a higher functioning of mental capacity than Dr. Murthy found.

On May 8, 2007, clinical psychologist, Dr. Clifford Taylor, completed a psychological evaluation of Plaintiff. (Id. at 422-28.) Dr. Taylor assessed

---

[4](...continued)
measuring its impact, and in predicting outcome." Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV"), 32-34 (American Psychiatric Ass'n ed., 4th ed. 2000). A GAF score of 51 is described as "[m]oderate symptoms . . . OR moderate difficulty in social, occupational, or school functioning . . . ." Id. at 34.

Plaintiff's functional limitations as follows:

> The applicant's ability to understand, remember, and carry out job instructions was assessed to be mildly impaired as evidenced by her performance on the mental status examination and the memory portions of the testing.
>
> Her ability to maintain attention, concentration, persistence and paces were assessed to be mildly impaired as she performed normal on measures of sustained concentration . . . .
>
> Her ability to relate and interact with supervisors, coworkers, and the public were assessed to be moderately impaired based on her current mood quality, attitude, and willingness to follow instructions and cooperation during this contact period.
>
> Her ability to adapt to day-to-day work activities, including attendance and safety, was assessed to be mildly impaired from a mental standpoint based on her current mental status and presentation.

(Id. at 428.) Dr. Taylor also assessed Plaintiff to have a GAF score of 62, or having "[s]ome mild symptoms . . . OR difficulty in social, occupational, or school functioning . . . , but generally functioning pretty well, has some meaningful interpersonal relationships. (Id. at 427); DSM-IV at 34. Here again, Dr. Taylor, based upon independent clinical findings, assessed a greater level of mental functioning than Dr. Murthy's assessment.

On November 18, 2007, clinical psychologist Dr. Kim Goldman completed a psychological evaluation of Plaintiff. (Id. at 430-33.) Based on her evaluation, Dr. Goldman indicated that Plaintiff was alert and aware of her surroundings, her attention to instructions was fair, her task persistence was fair, her judgment and understanding of social convention was adequate, and her insight was fair to poor.

(Id. at 431-32.) Dr. Goldman also assessed Plaintiff to have a GAF score of 68, or in the same range as Dr. Taylor's GAF finding stated above. (Id. at 433); see supra, Discussion Part III.A.2. As with Drs. Bagner and Taylor, Dr. Goldman also provided a greater level of mental functioning than Dr. Murthy. Thus, the opinions of the consultative physicians constitute substantial evidence since they were based on independent clinical findings, and any conflict between these findings and Dr. Murthy's opinion was for the ALJ to resolve. See Andrews, 53 F.3d at 1041 (opinion of nontreating source based on independent clinical findings may itself be substantial evidence).

Finally, the ALJ relied upon the testimony of the medical expert to reject Dr. Murthy's assessment. (AR at 310.) The ALJ stated:

> Dr. Malancharuvil, Ph.D. and a medical expert, testified after reviewing the entire medical record and hearing the claimant's testimony. . . . Dr. Malancharuvil testified that claimant's impairments do not meet or equal listing level severity, and the claimant could perform habituated, moderately complex tasks of four to five steps. She cannot perform fast-paced work and cannot be in charge of the safety of others. The claimant has borderline intellectual functioning and cannot do jobs requiring significant reading. She can do simple math.

(Id.)[5] Dr. Malancharuvil, like the consultative physicians, opined that Plaintiff had a greater level of mental functioning than Dr. Murthy's assessment. The opinion of Dr. Malancharuvil constitutes substantial evidence since it also was based on independent clinical findings, and any conflict between this opinion and Dr.

---

[5] The transcript from the hearing does not contain Dr. Malancharuvil's testimony as there were problems with the recording. (AR at 482, 486, 494); see also JS at 10 n.1. Plaintiff and Defendant do not dispute the ALJ's account of Dr. Malancharuvil's testimony.

Murthy's opinion was for the ALJ to resolve. See Andrews, 53 F.3d at 1041.

Based on the foregoing, the ALJ provided specific and legitimate reasons, supported by substantial evidence in the record, to reject Dr. Murthy's opinion. Thomas, 278 F.3d at 957; Andrews, 53 F.3d at 1041; Magallanes, 881 F.2d at 751; Miller, 770 F.2d at 849. Thus, there was no error.

**B. The ALJ Properly Evaluated the Credibility of Plaintiff**

Plaintiff contends the ALJ erroneously assessed Plaintiff's credibility by failing to provide clear and convincing reasons for rejecting her subjective pain testimony. (JS at 11-13.) The Court disagrees.

**1. Applicable Law.**

An ALJ's credibility finding must be properly supported by the record and sufficiently specific to ensure a reviewing court that the ALJ did not arbitrarily reject a claimant's subjective testimony. Bunnell v. Sullivan, 947 F.2d 341, 345-47 (9th Cir. 1991). An ALJ's assessment of pain severity and claimant credibility is entitled to "great weight." Weetman v. Sullivan, 877 F.2d 20, 22 (9th Cir. 1989); Nyman v. Heckler, 779 F.2d 528, 531 (9th Cir. 1986). When, as here, an ALJ's disbelief of a claimant's testimony is a critical factor in a decision to deny benefits, the ALJ must make explicit credibility findings. Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990); Lewin v. Schweiker, 654 F.2d 631, 635 (9th Cir. 1981); see also Albalos v. Sullivan, 907 F.2d 871, 874 (9th Cir. 1990) (an implicit finding that claimant was not credible is insufficient).

Under the "Cotton test," where the claimant has produced objective medical evidence of an impairment which could reasonably be expected to produce some degree of pain and/or other symptoms, and the record is devoid of any affirmative evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of the claimant's pain and/or other symptoms only if the ALJ makes

specific findings stating clear and convincing reasons for doing so. See Cotton v. Bowen, 799 F.2d 1403, 1407 (9th Cir. 1986); see also Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996); Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993); Bunnell, 947 F.2d at 343.

To determine whether a claimant's testimony regarding the severity of his symptoms is credible, the ALJ may consider, *inter alia*, the following evidence: (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; (3) the claimant's daily activities; and (4) testimony from physicians and third parties concerning the nature, severity, and effect of the claimant's symptoms. Thomas, 278 F.3d at 958-59; see also Smolen, 80 F.3d at 1284.

Social Security Ruling ("SSR") 96-7p further provides factors that may be considered to determine a claimant's credibility such as: 1) the individual's daily activities; 2) the location, duration, frequency, and intensity of the individual's pain and other symptoms; 3) factors that precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; 5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; 6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and 7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. SSR 96-7p.

/ / /

**2. Analysis.**

Here, the ALJ stated clear and convincing reasons for rejecting Plaintiff's credibility and subjective complaints based upon Plaintiff's adopted lifestyle, evidence of daily activities that were inconsistent with her subjective complaints, Plaintiff's prior criminal history, and the medical opinions of other treating and consultative physicians. (AR at 312.)

As to Plaintiff's adopted lifestyle, the ALJ stated:

> [Plaintiff's] symptoms are not credible to the extent they are inconsistent with the residual functional capacity assessed herein. While psychological tests have shown no evidence of "fake bad," her assessment of her limitations is of course subjective. She may believe she is severely impaired but has no basis for comparison as she has never worked. The claimant does not sleep well at night and sleeps during the day. This is an adopted lifestyle. If occupied during the day, she would probably change her sleep habits to conform to her schedule. Now, she is doing the opposite because there is no requirement to maintain a schedule.

(Id.) The ALJ reasonably questioned Plaintiff's complete lack of employment history to cast doubt on her trustworthiness. (AR at 145, 285, 312, 493); see also Osenbrock v. Apfel, 240 F.3d 1157, 1165-67 (9th Cir. 2001) (ALJ may discredit a claimant's testimony regarding subjective symptoms due to the claimant's "self-limited" activities and lack of motivation)).

Relying upon Plaintiff's own description of her daily activities, the ALJ found Plaintiff not be a credible witness and discredited the severity of her subjective complaints. (AR at 312.) According to Plaintiff's own statements and testimony, she was able to perform household chores including laundry, dishes, cooking, and taking out the trash; she was also able to manage her finances, shop for groceries, take her children to and from school, drive, watch movies at theaters,

and visit family. (Id. at 96-98, 126, 288, 290-91, 312, 424-25, 430-31.) The Court finds that the ALJ could properly rely on Plaintiff's daily activities, such as, *inter alia*, completing household chores, cooking, and shopping, to support his adverse credibility determination. See, e.g., Thomas, 278 F.3d at 958-59 (ALJ may properly consider inconsistencies between claimant's testimony and claimant's daily activities); Morgan v. Apfel, 169 F.3d 595, 599-600 (9th Cir. 1999) (ALJ may properly rely on contradictions between claimant's reported limitations and claimant's daily activities); Tidwell v. Apfel, 161 F.3d 599, 602 (9th Cir. 1998) (daily activities inconsistent with total disability undermined subjective testimony of disabling pain); Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995) (ALJ may properly rely on claimant's daily activities, including ability to drive); Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989)(ALJ may properly rely on daily activities inconsistent with claim of disabling pain); SSR 96-7p.

The ALJ also based his adverse credibility determination on Plaintiff's prior criminal history. (AR at 312, 291-92.) The ALJ stated:

> The claimant has been arrested and has served jail time. She was not arrested just once, but three times. The credibility of a known or convicted criminal is besmirched as they have been proven untrustworthy by their criminal behavior.

(Id. at 312.) By utilizing ordinary techniques of credibility evaluation, the ALJ rejected Plaintiff's credibility partially based on her past criminal history. Thomas, 278 F.3d at 958-59; see also Smolen, 80 F.3d at 1284.

Finally, the ALJ based his adverse credibility determination on the findings of the medical sources and the lack of objective medical evidence to support Plaintiff's disabling symptoms. (AR at 312.) The ALJ stated:

> The claimant has had little physical or psychiatric treatment. She complained of frequent need for restroom breaks yet this is not shown in

> her treatment records. In closing arguments, the claimant's representative argued that the claimant's psychiatric medically determinable impairments are more significant than shown. This could be but such is not shown by the treating records and the two psychiatric consultative examinations. . . . The most recent mental status examinations do not support the claimant's allegations of disabling symptoms. She was alert and oriented. Attention and concentration were adequate. There were no perceptual disturbances such as delusions or auditory hallucinations. Speech was normal. She was able to follow directions without rewording or simplification of instructions. Concentration was fairly intact. The claimant's own treating psychiatrist, Dr. Murthy, was of the opinion that Plaintiff was not severely impaired in any domain but for carrying out and remembering instructions and even then, she was only slightly impaired in the ability to perform simple tasks and only moderately impaired in the ability to perform complex tasks.

(Id.) The record supports the ALJ's finding in that there was a lack of objective medical evidence to support Plaintiff's claims. (AR at 312, 390-433); see supra, Discussion Part III.A. Accordingly, the ALJ properly discounted Plaintiff's credibility based upon the findings from her treating and consultative physicians regarding the nature, severity and effect of Plaintiff's disabling complaints. See Thomas, 278 F.3d at 958-59; see also Smolen, 80 F.3d at 1284.

Based on the foregoing, the Court finds that the ALJ provided clear and convincing reasons, supported by substantial evidence, for rejecting Plaintiff's credibility as to her subjective symptoms. Thus, there was no error.

/ / /

**C. The ALJ Properly Considered the Lay Witness Testimony.**

Plaintiff contends the ALJ failed to provide sufficient reason for disregarding the testimony of a lay witness, Patricia Melendez. (JS at 11-13.)

Title 20 C.F.R. §§ 404.1513(d) and 416.913(d) provides that, in addition to medical evidence, the Commissioner "may also use evidence from other sources to show the severity of [an individual's] impairment(s) and how it affects [her] ability to work." Further, the Ninth Circuit has repeatedly held that "[d]escriptions by friends and family members in a position to observe a claimant's symptoms and daily activities have routinely been treated as competent evidence." Sprague v. Bowen, 812 F.2d 1226, 1232 (9th Cir. 1987). This applies equally to the sworn hearing testimony of witnesses (see Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996)), as well as to unsworn statements and letters of friends and relatives. See Schneider v. Comm'r of Soc. Sec. Admin., 223 F.3d 968, 974 (9th Cir. 2000). If the ALJ chooses to reject such evidence from "other sources," he may not do so without comment. Nguyen, 100 F.3d at 1467. When rejecting lay witness testimony, the ALJ must provide "reasons that are germane to each witness." Dodrill, 12 F.3d at 919.

In this case, the ALJ summarized Ms. Melendez's testimony. (AR at 312-13.) He pointed out the inconsistencies in her testimony and the record evidence. (Id.) For instance, Ms. Melendez testified that Plaintiff needs help cooking and performing household chores due to her need for restroom breaks; however, there is no objective evidence of incontinence problems. (Id.) She claimed that Plaintiff is forgetful and unable to follow instructions; however, mental status examinations indicated that there was "no evidence of impaired memory or difficulty following instructions." (Id.) She also stated that Plaintiff does not attend movies, has no entertainment activities, and does not like chatting with others. (Id.) Contrary to Ms. Melendez's contention, Plaintiff testified that she does go to movies and recently visited her grandson. (Id.) Ms. Melendez also stated that Plaintiff spends her day mostly in bed, but Plaintiff testified that she "takes are children to and from

school, goes to movies, drives, [and] does household chores . . . ." (Id.) Finally, the ALJ indicated that Ms. Melendez's testimony was internally inconsistent. The ALJ stated, "Ms. Melendez said that the claimant could not read but then, inconsistently, said the claimant has to re-read a lot due to poor concentration." (Id. (citations omitted).) The record supports the ALJ's contentions. (AR at 89-94, 422-33.) Based on these inconsistencies, the ALJ found Ms. Melendez's statements "inconsistent, not supported by the objective clinical or diagnostic medical evidence, and not worthy of significant probative value." (Id. at 313.)

Based on the foregoing, the Court finds that the ALJ provided sufficient reason germane to the witness for giving her statement less weight. Thus, there was no error.

**D. The ALJ Posed a Complete Hypothetical to the VE.**

Plaintiff also claims that the ALJ erred by posing an incomplete hypothetical to the VE when the ALJ failed to include Plaintiff's need for frequent restroom breaks. (JS at 16-17.) The Court disagrees.

"In order for the testimony of a VE to be considered reliable, the hypothetical posed must include 'all of the claimant's functional limitations, both physical and mental' supported by the record." Thomas, 278 F.3d at 956 (quoting Flores v. Shalala, 49 F.3d 562, 570-71 (9th Cir. 1995)). Hypothetical questions posed to a VE need not include all alleged limitations, but rather only those limitations which the ALJ finds to exist. See, e.g., Magallanes, 881 F.2d at 756-57; Copeland v. Bowen, 861 F.2d 536, 540 (9th Cir. 1988); Martinez v. Heckler, 807 F.2d 771, 773-74 (9th Cir. 1986). As a result, an ALJ must propose a hypothetical that is based on medical assumptions, supported by substantial evidence in the record, that reflects the claimant's limitations. Osenbrock, 240 F.3d at 1163-64 (citing Roberts v. Shalala, 66 F.3d 179, 184 (9th Cir. 1995)); see also Andrews, 53 F.3d at 1043 (although the hypothetical may be based on evidence which is disputed, the assumptions in the hypothetical must be supported

by the record).

Here, as stated above, the ALJ properly discredited Plaintiff's claim that she required frequent restroom breaks, as it was unsupported by the medical evidence. (AR at 312.) While there is one instance in the record of Plaintiff complaining of a diarrhea incident, there is no other mention of this or similar incidents requiring unscheduled bathroom breaks in the record. (Id. at 263, 267.) Additionally, the ALJ properly discredited Plaintiff's credibility. As a result, her testimony that she required restroom breaks was properly rejected. See supra, Discussion Part III.B. Accordingly, there was no error in the ALJ's hypothetical questions to the VE which did not include a requirement for unscheduled restroom breaks. Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001) ("Because the ALJ included all of the limitations that he found to exist, and because his findings were supported by substantial evidence, the ALJ did not err in omitting the other limitations that Rollins had claimed, but had failed to prove.").

**IV.**

**ORDER**

Based on the foregoing, IT THEREFORE IS ORDERED that Judgment be entered affirming the decision of the Commissioner, and dismissing this action with prejudice.

Dated: November 3, 2009

HONORABLE OSWALD PARADA
United States Magistrate Judge